UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH RUDOLPHO
RIOS, JR.,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

Case No. 2:20-cv-12231
District Judge Stephen J. Murphy, III
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (ECF No. 15), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16), and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (ECF No. 15), **GRANT** Defendant's motion for summary

judgment (ECF No. 16), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Joseph Rudolph Rios, Jr., brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

(Commissioner) denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment or remand (ECF No. 15), the Commissioner's cross-motion for summary judgment (ECF No. 16), and the administrative record (ECF No. 10).

### A.     Background and Administrative History

Plaintiff alleges his disability began on November 15, 2018, at the age of 47. (ECF No. 10, PageID.171.)  In his disability report, he lists several conditions (post-traumatic stress disorder (PTSD), right knee meniscus tear, left knee degenerative joint disease, left shoulder strain with limited abduction, dermatitis, headaches, depression, cervical spine fusion, cervical spine stenosis, and sleep insomnia) as limiting his ability to work.  (*Id*., PageID.194.)  His application was denied on May 13, 2019.  (*Id*., PageID.102-127.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (*Id*., PageID.129-132.)  On November 25, 2019, ALJ Timothy Scallen held a hearing, at which Plaintiff and a vocational expert (VE), Pauline Pegram, testified.  (*Id*., PageID.65-101, 260-262.)  On March 31, 2020, ALJ Scallen issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id*., PageID.43-64.)

Plaintiff submitted a request for review of the hearing decision/order.  (*Id*., PageID.167-170.)  However, on June 23, 2020, the Appeals Council denied

Plaintiff's request for review.  (*Id.*, PageID.36-40.)  Thus, ALJ Scallen's decision

became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 19, 2020.  (ECF

No. 1.)

## B.    Plaintiff's Medical History

The administrative record contains approximately 496 pages of medical

records, which were available to the ALJ at the time of his March 31, 2020

decision.  (ECF No. 10, PageID.29, 277-772 [Exhibits 1F-14F].)  These materials

will be discussed in detail, as necessary, below.

## C.    The July 16, 2019 Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since November 15, 2018, the alleged onset date.  (ECF No. 10,

PageID.48.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments:  degenerative disc disease of the cervical spine with residuals of

cervical fusion in June 2017, history of right knee meniscus tear with bilateral knee

arthritis, obstructive sleep apnea, and depressive and anxiety disorders.  (*Id.*,

PageID.48-50.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id.*, PageID.50-54.)  **Between Steps 3 and 4** of the

3

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

(RFC)[1] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . , subject to the following limitations: (1) standing and/or walking no more than a combined two hours during an 8-hour workday; (2) use of a cane for ambulation; (3) sitting six hours during an 8-hour workday [*i.e., exertional limitations*]; (4) occasional climbing of ramps and/or stairs, but no climbing of ladders, ropes, or scaffolds; (5) occasional balancing, stooping, crouching, crawling, and kneeling [*i.e., postural limitations*]; (6) frequent handling and fingering with the bilateral upper extremities; (7) no overhead reaching [*i.e., manipulative limitations*]; (8) no concentrated exposure to unprotected heights, vibrating machinery, or vibrating tools; (9) no concentrated exposure to extreme cold or humidity [*i.e., environmental limitations*]; (10) limited to simple, repetitive tasks with no requirement for interaction with coworkers or the public as part of job duties [*i.e., social interaction limitations*].

(*Id.*, PageID.54-59.)  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.*, PageID.59.)  At **Step 5**, the ALJ determined

that, considering Plaintiff's age, education, work experience, and RFC, there were

jobs that existed in significant numbers in the national economy that Plaintiff could

perform.  (*Id.*, PageID.59-60.)  The ALJ therefore concluded that Plaintiff had not

been under a disability, as defined in the Social Security Act, from November 15,

2018 through the date of the decision.  (*Id.*, PageID.60-61.)

### D.    Standard of Review

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

> **E.  Analysis**

Plaintiff's stated "issue" presented – a requirement of my Practice Guidelines for briefing in social security cases – is "[w]hether the decision . . . is supported by substantial evidence and contains errors of law."  (ECF No. 15, PageID.784.)  This is so general and vague as to be meaningless.  Nonetheless, the sole issue discernable from the argument itself is that *the RFC assessment is inaccurate* as to:  (1) his cervical spine limitations; (2) his ability to interact with supervisors; and, (3) the amount of time he would be off-task.  (ECF No. 15,

PageID.793.)[2]  The Commissioner argues that the ALJ properly determined

Plaintiff's RFC.  (ECF No. 16, PageID.804-821.)

### 1.    Cervical spine

Plaintiff takes issue with the ALJ's treatment of his cervical spine

impairment.  (ECF No. 15, PageID.793-794. )  At Step 2, the ALJ determined that

Plaintiff's "degenerative disc disease of the cervical spine with residuals of

cervical fusion in June 2017" was severe.  In so doing, the ALJ made multiple

record citations, including Nicholas Sousa, D.O.'s April 20, 2019 observation that

"range of motion was decreased in the cervical spine," (*id*., PageID.627).  (*Id*.,

PageID.48-49.)  However, at Step 3, the ALJ found that Plaintiff's

"musculoskeletal impairments do not prevent effective ambulation or the ability to

perform fine and gross motor movements effectively as defined in section 1.00 . . .

."  (Id., PageID.50.)

Hinting at error at Step 3, Plaintiff's asserts that he "is certain Listing 1.04,"

which concerns disorders of the spine, "is met (or medically equaled)[.]"  (ECF

No. 15, PageID.792-793; ECF No. 10, PageID.108.)  Though, as the

Commissioner correctly notes, Plaintiff "fails to present any *argument* that his

---

[2] Although Plaintiff attempts to frame his statement of error as one challenging the
ALJ's finding at Step 5, Plaintiff essentially challenges the ALJ's RFC
determination by arguing that the ALJ "failed to create an accurate residual
functional capacity assessment . . . ."  (ECF No. 15, PageID.791-793.)

impairment meets or medically equals a listing[.]" (ECF No. 16, PageID.808 n.2 (emphasis added).) Accordingly, such an argument is waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293-294 (1st Cir.1995) (citation omitted)).

With more articulation, Plaintiff takes issue with the ALJ's RFC determination, namely, claiming the ALJ "neglected to include limitations to the movement of [his] cervical spine." (ECF No. 15, PageID.793.) Within the RFC determination, the ALJ addressed Plaintiff's cervical impairment, in support of which the ALJ discussed Nicholas Sousa, D.O.'s April 20, 2019 consultative examination report (ECF No. 10, PageID.625-629) and Plaintiff's testimony (ECF No. 10, PageID.73-74). (ECF No. 10, PageID.54-56.) Then, "given the normal strength and neurological function in light of his history of cervical fusion," the ALJ limited Plaintiff to "the basic exertional requirements of light work activity," and, among other limitations, opined:

> . . . consistent with his history of cervical fusion and reports of
> ongoing numbness and tingling in the arms, he should not perform
> more than frequent handling and fingering bilaterally and no overhead
> reaching with either arm. As precautionary measure, given his history

8

of cervical fusion and knee issues, the claimant should avoid
concentrated exposure to extreme cold or humidity, unprotected
heights, and vibrating machinery or tools.

(*Id.*, PageID.55-56.)  Thus, the ALJ accounted for Plaintiff's cervical impairment

with exertional, manipulative, and environmental limitations, if not also various

postural limitations.

Plaintiff has not met his burden to overturn the ALJ's related RFC.  In

support of his claim that the RFC "does not account for limitations in [his] ability

to hold his head in a static position, turn side to side, or look up or down[,]"

Plaintiff points to:

- Documentation of "tenderness and restricted range of motion in
  the neck," namely, records of "range of motion restriction in the
  cervical spine" (ECF No. 10, PageID.278, 500, 507, 627, 648,
  659, 696) and "cervical spine tenderness" (*id.*, PageID.500,
  507, 582, 648, 670, 679, 690, 696);

- The July 27, 2017 notes from Noor S. Bunney, M.D., to whom
  Plaintiff complained of "symptoms of severe headaches"
  following neck surgery (ECF No. 10, PageID.548);

- The August 18, 2017 physical rehabilitation initial evaluation,
  which reflects that Plaintiff's symptoms are exacerbated "[b]y
  turning the neck[,]" (*id.*, PageID.277);

- The December 23, 2017 notes from Dr. Bunney, to whom
  Plaintiff complained of "symptoms of a headache for the last
  two weeks" and that "after the cervical spinal fusion he has
  been having issues with headaches[,]" (*id.*, PageID.546); and,

- Plaintiff's February 7, 2019 function report, which reflects that Plaintiff's impairments interfere with his sleep and personal care (ECF No. 10, PageID.216-217).

(*Id.*, PageID.794, 786-787.)  However, even if these documents are evidence that "he has severe neck pain that interferes with his sleep and his ability to care for himself," he has "tenderness and restricted range of motion in the neck," "[his] pain intensifies when he turns his neck," and "he suffers from headaches with frequent movement of his neck after his fusion surgery[,]" (*id.*, PageID.794), Plaintiff has not shown how the RFC's exertional, postural, manipulative, and environmental limitations fail to accommodate his neck pain and headaches.

Finally, Plaintiff suggests that the ALJ should have inquired about neck positions for jobs at the light exertional level or, more particularly, for the jobs cited in the decision – *i.e.*, hand packager in several industries, assembler of communications equipment, and assembler of plastic hospital products (*see* ECF No. 10, PageID.60, 95).  (ECF No. 15, PageID.794.)  Yet, at the administrative hearing, Plaintiff waived his right to get a representative (ECF No. 10, PageID.67-68), and, following the ALJ's examination of the VE (*id.*, PageID.89-98), the ALJ asked, "Did we miss any limitations in your opinion or did you want to ask her any questions[,]" to which Plaintiff responded, "I can't think of any.  No, sir[,]" (*id.*, PageID.98-99).  As set forth above, as it relates to Plaintiff's cervical impairment, "the ALJ's RFC determination was supported by substantial evidence," thus,

10

Plaintiff "has not demonstrated that the ALJ failed to ask proper hypothetical questions to the vocational expert . . . ." *Hill v. Comm'r of Soc. Sec.*, 558 F. App'x 535, 536 (6th Cir. 2014).

### 2.   Interaction with supervisors

Given the RFC's limitation of "no requirement for interaction with *coworkers* or the public as part of job duties[,]" (ECF No. 10, PageID.54 (emphasis added)), Plaintiff contests the ALJ's corollary conclusion that "Plaintiff has no limitation in his ability to interact with *supervisors*[.]"  (ECF No. 15, PageID.793 (emphasis added).)

The ALJ addressed Plaintiff's ability to interact with others throughout the written decision.  At Step 3, the ALJ:  (a) acknowledged Plaintiff's testimony that "[a]t times" he has "issues with just in general interacting with people[,]" and "[f]or the most time, [he] stick[s] to [his] small group of friends[,]" (ECF No. 10, PageID.86); (b) noted Gerald Terlep, Ph.D.'s February 5, 2019 opinion that Plaintiff's functioning "has decreased to the point that he is not able to maintain either employment or normative social interactions[,]" (*id.*, PageID.621); and, (c) explained the conclusion that Plaintiff "experiences no more than a moderate limitation" in "interacting with others," with references to, *inter alia*, Terry L. Rudolph, Ph.D.'s conclusion that Plaintiff "generally is socially active[,]" (*id.*, PageID.770), and the state agency psychological consultant's opinion that Plaintiff

11

was moderately impaired in the area of interacting with others (*see id*.,

PageID.108, 113-114).  (ECF No. 10, PageID.51-53.)

Then, within the RFC determination, the ALJ contrasted early 2019 records

from Dr. Terlep (ECF No. 10, PageID.608-621) with the February 3, 2020

consultative examination report from Dr. Rudolph (ECF No. 10, PageID.767-770)

and/or Dr. Rudolph's Medical Source Statement (MSS) of mental ability to do

work-related activities (*id*., PageID.771-772) and observed that, "given the nature

of depression, anxiety, and PTSD, as well as the effects of pain, it is appropriate to

impose some limits on his ability to perform unskilled work and interact with

others during the workday."  (*Id*., PageID.56.)  Moreover, the ALJ noted:

"[a]llowing maximum benefit of doubt to the claimant's allegations, he is limited

to simple, repetitive tasks without interaction with coworkers and the public."  (*Id*.)

Also, with respect to the opinion evidence, the ALJ stated:

> The State Agency psychological consultant indicated that the claimant
> could perform simple tasks on a sustained basis with incidental public
> contact.  That opinion is also substantially persuasive and is consistent
> with the overall psychological evidence of record.  The claimant
> experiences some PTSD and depressive symptoms, but the evaluation
> of Dr. Rudolph noted minimal to no functional difficulty.  In light of
> that examination, as well as the earlier evaluations for PTSD at the
> VA, some limitations in *interaction* appear appropriate.  Precluding
> *interaction* with coworkers and the public is more consistent with a
> moderate limitation in this area, as well as the claimant's activities,
> which include socializing with his friends.

12

(ECF No. 10, PageID.58.)  Accordingly, the RFC includes a limitation of "no requirement for interaction with coworkers or the public as part of job duties." (*Id*., PageID.54.)

Plaintiff's argument that the ALJ should have limited Plaintiff's interactions with supervisors is unavailing.  First, Plaintiff claims "it does not logically follow that someone with such extreme limitations in their work environment would be able to tolerate supervision nor supervisors on a 'constant' basis."  (ECF No. 15, PageID.795.)  However, there is support for the omission of a limitation to work with supervisors, as the state agency psychological consultant opined that Plaintiff was "not significantly limited" in his "ability to accept instructions and respond appropriately to criticism from supervisors."  (ECF No. 10, PageID.113-114.)  As noted above, to the extent the state agency psychological consultant opined that Plaintiff "could perform simple tasks on a sustained basis with incidental public contact[,]" the ALJ found the opinion "substantially persuasive" and "consistent with the overall psychological evidence of record."  (*Id*., PageID.58.)

Second, Plaintiff claims that "[s]ubstantial evidence shows that [he] has recurrent flashbacks, panic attacks, anxiety, impaired judgment, and a history of anger in the workplace," in support of which he cites the November 6, 2018 consultation with Ian M. Sherwood, Ph.D. (ECF No. 10, PageID.409), the February 6, 2019 assessment by Dr. Terlep (*id*., PageID.619), the July 18, 2019

13

decision from the Department of Veterans Affairs (*id*., PageID.633, 636) and the February 3, 2020 CE report from Dr. Rudolph (*id*., PageID.770).  (ECF No. 15, PageID.795.)  Yet, the ALJ expressly noted the November 6, 2018 VA treatment records, Dr. Terlep's early 2019 intake assessment, and, albeit not by date, the VA's July 18, 2019 decision that Plaintiff's PTSD was "30 percent disabling." (ECF No. 10, PageID.51-52, 58, 408-411, 453, 617, 633, 636-637.)  Moreover, Dr. Rudolph's MSS reflects that Plaintiff's ability to respond to supervision, co-workers, and work pressures in a work setting was not affected by the impairment (ECF No. 10, PageID.771-772), the ALJ acknowledged this conclusion within the Step 3 discussion (*id*., PageID.52), and when reviewing the opinion evidence within the RFC discussion further explained:  "Dr. Rudolph's opinion is generally persuasive and is consistent with his mental status findings and testing.  However, in light of the nature of his mental impairments and the earlier findings of Dr. Terlep, and more so the VA consultations, the appropriate functional limitations have been included in the mental residual functional capacity."  (ECF No. 10, PageID.58.)  Plaintiff has not shown error in the ALJ's treatment of this evidence.

Finally, Plaintiff notes that "the ALJ never asked the VE" about "how limitations to the level of supervision would impact the occupation base . . . ." (ECF No. 15, PageID.795.)  As set forth above, the absence of a limitation to interaction with supervisors is supported by the opinions of the state agency

psychological consultant and Dr. Rudolph's MSS.  (ECF No. 10, PageID.113-114,
771-772.)  As the Commissioner correctly points out, "the ALJ is not obliged to
incorporate unsubstantiated complaints into his hypotheticals[.]"  *Stanley v. Sec'y*
*of Health & Hum. Servs.*, 39 F.3d 115, 118-119 (6th Cir. 1994) (citing *Hardaway*
*v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927–28 (6th Cir.1987)).
(ECF No. 16, PageID.818.)[3]

### 3.    Off-task percentage

Finally, given the VE's testimony that it is work-preclusive if the claimant
"was likely to be off task more than ten percent of a normal eight-hour workday,"
(ECF No. 10, PageID.97-98), Plaintiff contests the ALJ's corollary conclusion that
Plaintiff "would not be off task more than 10% of the workday."  (ECF No. 15,
PageID.793.)  Preliminarily, the ALJ made several observations about Plaintiff's
ability to complete tasks:

- Dr. Sousa's observation that Plaintiff "was able to complete all
  tasks asked of him with moderate to severe difficulty secondary
  to pain."  (ECF No. 10, PageID.628.)

---

[3] Two incidental points are worth noting here.  First, while the ALJ's written
decision acknowledges that "the DOT does not specifically address factors, such as
. . . interaction as described[,]" (ECF No. 10, PageID.60), at the administrative
hearing, the VE explained her opinion that "interaction with others is not an
inherent component of those occupations[,]" (*id*., PageID.96-97).  Second,  as
discussed earlier, at the administrative hearing, Plaintiff waived his right to get a
representative, the ALJ gave Plaintiff an opportunity to address missed limitations
or ask the VE questions (ECF No. 10, PageID.67-68, 98-99).

- Plaintiff experiences "no more than a moderate limitation" in "understanding, remembering or applying information" and "concentrating, persisting or maintaining pace."

- "The State Agency psychological consultant [Barbara Jones Smith, Ph.D.] indicated that the claimant could perform simple tasks on a sustained basis with incidental public contact." (ECF No. 10, PageID.110.)

(ECF No. 10, PageID.49, 52-53, 55, 58.)  Indeed, at Step 3, the ALJ explained: "Taking into account the nature of PTSD and anxiety, it is reasonable to assume that the claimant would experience some interference with sustained concentration due to anxiety symptoms." (ECF No. 10, PageID.53.)  Then, within the RFC determination, the ALJ discussed the "conflicting opinions" of Drs. Rudolph and Terlep and assessed the limitations to "simple, repetitive tasks . . . [,]" which the ALJ elsewhere characterized as "unskilled" tasks.  (ECF No. 10, PageID.54, 56; *see also id*., PageID.59.)  In fact, the ALJ explained that this limitation *takes into account* "the test results of Dr Rudolph," "the complaints of the claimant concerning memory and concentration," "Dr Terlep's opinion to the extent minimally supported by the record[,]" and also "the effects of pain, if any in this area."  (*Id*., PageID.56.)

Plaintiff's argument that "the ALJ's assessment fails to account for any time off-task due to his impairments[,]" (ECF No. 15, PageID.795), is unavailing.  First, Plaintiff contends that "*if* all of the plaintiff's issues with severe pain, headaches,

16

panic attacks, insomnia, depression, side-effects from medications, anxiety, and difficulty concentrating amount to more than 10% . . . time off task . . . [,]" then "Plaintiff should be found disabled."  (ECF No. 15, PageID.795 (emphasis added).)  This statement does not show that these issues *do* result in being off-task more than 10 percent of the time.

Second, to the extent Plaintiff relies upon Gerald Terlep, Ph.D.'s February 5, 2019 opinion that Plaintiff's functioning "has decreased to the point that he is not able to maintain either employment or normative social interactions[,]" (ECF No. 10, PageID.621), or the Veterans Administration's July 18, 2019 decision that Plaintiff is "entitle[d] to individual unemployability[,]" because he is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities[,]" (*id.*, PageID.636) (*see* ECF No. 15, PageID.796), these are opinions on an issue reserved to the Commissioner.  *See*, *e.g.*, 20 C.F.R. § 404.1520b(c)(3); 20 C.F.R. § 404.1527(d).  Moreover, "[t]he administrative law judge was not bound to accept the disability rating made by the Veterans Administration." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013).

Third, Plaintiff notes the VE's testimony that employers will accept "no more than ten percent off task for such things as going to the bathroom, stretching your legs or frankly just reorienting yourself[,]" (ECF No. 10, PageID.97), and reasons that, in comparison to an able-bodied individual's off-task time, Plaintiff

17

would need "*additional time* to adjust his neck, stretch his legs due to knee pain, move his arms into comfortable positions, sit/stand due to pain in his back and knees," and/or "refocus after lapses in judgment or concentration."  (ECF No. 15, PageID.795-796 (emphasis added).)  Thus, Plaintiff's statement that the ALJ's RFC assessment "fails to account for *any* time off-task due to his impairments[,]" (ECF No. 15, PageID.795 (emphasis added)), is not entirely accurate, because the VE's testimony signals that being off task up to ten percent is tolerated.  More to the point, Plaintiff has not shown how the RFC's various exertional, postural, manipulative and environmental limitations – as well as the limitation to "simple, repetitive tasks with no requirement for interaction with coworkers or the public as part of job duties" – fail to account for these conditions.  Nor has Plaintiff articulated an error in the ALJ's treatment of Plaintiff's subjective complaints.  (*See*, *e.g.*, ECF No. 10, PageID.50, 53, 56-57.)  To be clear, the ALJ cited 20 C.F.R. § 404.1529, as well as SSR 16-3p, and explained that an RFC "for the reduced range of light work set forth above takes into account the location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors."  (*Id*., PageID.57.)  Additionally, if Plaintiff intended to argue that ALJ's RFC assessment fails to account for the ALJ's Step 3 conclusions that Plaintiff experiences, at most, "moderate limitation" in each of the four "paragraph B" criteria (*id*., PageID.52-53), it is not clear or undeveloped.  In

sum, Plaintiff has not shown error in the ALJ's corollary conclusion that Plaintiff "would not be off task more than 10% percent of the workday."  (ECF No. 10, PageID.793, 795.)

Finally, Plaintiff claims the ALJ "should call on a medical expert" for a "sound opinion on the matter" if the ALJ "is unable to pinpoint the level of off-task behavior . . . ."  (ECF No. 15, PageID.796.)  However, as the Commissioner correctly notes, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917).  (ECF No. 16, PageID.819.)  *See also Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.") (citing 20 C.F.R. § 416.917(a)).  Here, I am confident that the ALJ's decision was based on substantial and sufficient evidence.

## F.    Conclusion

Plaintiff seeks reversal of the ALJ's decision with an immediate award of benefits or, alternatively, remand "to properly address this issue with a vocational expert."  (ECF No. 15, PageID.796.)  However, Plaintiff has the burden of proof on his statement(s) of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529

(6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  He has not shown legal error in the ALJ's RFC determination.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for remand pursuant to Sentence Four (ECF No. 15), **GRANT** Defendant's motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  January 14, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE